[No. 24089.   Department One.   November 22, 1932.]

Angela Forsyth, *a minor, by Laura Forsyth, her guardian ad litem, Respondent,* v. John Kuphal *et al., Appellants.*[1]

*Ellis & Evans,* for appellants.

*Alfred Thompson, Frank R. Jeffery, F. A. Pellegrini,* and *W. B. Severyns,* for respondent.

Mitchell, J.—Angela Forsyth, about thirteen years of age, was injured in an automobile collision. She sued the owner of the automobile whose driver's negligence caused the collision, and recovered a verdict and judgment in the sum of twelve thousand dollars, from which the appeal has been taken.

[1]Reported in 15 P. (2d) 1115.

The sole question on the appeal is as to the amount of damages awarded, appellants claiming that it is excessive and was given under the influence of passion and prejudice; and that the trial judge abused his discretion in refusing to grant a new trial unless a reduced amount were accepted by the respondent, or grant a new trial outright.

At the age of thirteen months, the girl had influenza and double pneumonia, which left her afflicted with encephalitis, commonly known as sleeping sickness. She became emaciated, and her feet were affected, she didn't want to use her feet for some considerable time and suffered from nervousness and tremor when excited. Later, she improved nicely, as the testimony shows. She got along well at school, although part of the time she was given a quiet room, with others, in which to study. Her mother testified that, prior to the accident, the girl went to school alone, more than a mile away, dressed and undressed herself, fed herself, did everything as any normal girl, and helped with the housework and baked beautifully.

Since the accident, there is nothing the child can do. She cannot go to school, because she falls down if allowed to walk very far, and cannot dress or feed herself. She cannot play handball, croquet, hopscotch, or other games with the children, as she did prior to the accident. Before the accident, she had gotten to be about normal, but since then she cannot do anything because of "the tremors;" and since the accident, she throws her head to the left, and her whole body seems to be rigid. "Q. Has she any trouble in falling? A. Yes, she has fallen. She falls all the time." She further testified that, prior to the accident, the child had no aches or pains; but since then, she complains of aches and pains in her head and back.

The family physician testified that, under treat-

ment, the child was improving before the accident, that she was getting on well at school and at home in social life, including play; that she was normal, except her body had a tendency to be somewhat rigid, when excited, and a little stiffness in her walk. That he diagnosed her trouble as encephalitis, and that the disease had been arrested at the time of the accident. That the girl was taken to his office shortly after the accident. He further testified:

"She came in. Her head was all swathed in bandages. They were blood soaked. Her eyes were all black and her cheek bones swollen. I took off the bandages and over this part of the forehead (indicating) there was a large swollen area that was pulpified and thick and swollen and over the eye there was a cut and a small cut at the angle of the eye. She was in a very bad nervous condition. She jerked and for the first time I noticed that she pulled her head back like this (indicating) and her spine was arched upwards and her foot was turned very much out and she had a very great tremor and I had a hard time getting her undressed and a new dressing put on. At that time I had learned of the accident. She was complaining of headaches, not able to sleep. She was having nightmares, she was unable to feed herself, unable to dress herself, unable to walk, surely. She was apt to stumble or run into a wall along the corridor."

He further testified that, before the accident, she never had a jerking and pulling to one side, though at times there was a certain amount of rigidity in her neck and other muscles; that she had lost her ability to enter into conversation among members of the family. He further testified that sleeping sickness is a new kind of disease, "probably first fully described in 1917," and then testified:

"Q. Will you state whether or not Angela Forsyth's case was progressive or arrested? A. She was arrested. Q. This was before the accident? A. Before

the accident everything pointed in her history to an arrest of the disease because she was getting along very well in school and with her household duties, her social life with other children and in her family life. Q. You may state whether the condition is progressive or arrested at the present time? A. Progressive. Q. And what do you attribute the change from arrested condition to a progressive condition? A. To the injury she sustained. Q. Why do you say that, Doctor, just explain. A. Because the demarkation is so sharp. I saw her immediately before and I have seen her several times since and there is a very decided change in this girl's condition. Instead of being practically a normal child she is an abnormal child now. Q. Is her present condition permanent? A. I think it is.''

Another physician, who had examined her and learned the history of her case, testified that, in his opinion, her present condition is progressive. Still another physician, upon making a personal examination and learning her history, testified:

''She is now in a rather serious condition. It is a progressive affair and the outlook is not promising for any improvement or any arresting of this present condition. . . .''

and,

''Basing my opinion upon the information I obtained from Doctor Wheelan, it is my opinion that this condition had been controlled and was in a clinically arrested stage at the time of the accident but since the accident there has been a rapid decadence or progression of this condition.''

Further details of the facts cannot reasonably be set out, nor is it necessary. Other experts than those already referred to testified, but said nothing to necessarily cause the jury and trial court from looking at the facts as they have been substantially described above.

██ It appears from the evidence that the girl's mental powers have not been impaired, which, in a way, will allow her to be constantly reminded of her unfortunate and apparently permanent physical troubles. The amount of the verdict appears in a way to be large, but how shall one truly measure damages in such a case? It is not suggested that anything outside of the size of the verdict indicates passion and prejudice. The amount was fixed by a jury and approved by a trial judge, all of whom had the advantage of seeing and hearing the witnesses and also the young girl so severely injured. Upon a consideration of the whole record, we find nothing to take the case out of the judgment of the jury and of the trial judge in denying motion for a new trial, as such things must be considered by an appellate court.

Affirmed.

TOLMAN, C. J., HOLCOMB, PARKER, and MILLARD, JJ., concur.